CARMEN VALENTÍN VDA. DE MANZANO, peticionaria, *v.* CORTE DE DISTRITO DE MAYAGÜEZ, HON. DOMINGO MASSARI, JUEZ INTERINO, demandada.

Núm. 1263.—*Sometido:* Diciembre 8, 1941. *Resuelto:* Febrero 10, 1942.

. *Palés Matos* y *Pascasio Fajardo Martínez,* abogados de la peticionaria; *José Sabater,* abogado de la interventora, hija del finado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Este es un *certiorari* expedido a ruego de Carmen Valentín Vda. de Manzano, reclamando los autos del procedimiento núm. 2933 de la Corte de Distrito de Mayagüez sobre administración judicial de los bienes relictos a su fallecimiento por Luis B. Manzano, para revisar y anular en su caso la orden dictada en el mismo el 4 de noviembre último, como sigue:

"Resolviendo la moción de la hija del causante Josefa Manzano de Fernández, por la que se pide que la viuda Carmen Valentín o pague el alquiler de la casa que ocupa y la cual está bajo administración judicial en este procedimiento, o la desocupe, la corte la declara con lugar por el fundamento de que, dicha casa está bajo administración judicial y el administrador está obligado a conseguir que todos los bienes del caudal hereditario y que están bajo administración judicial, produzcan rentas y utilidades en beneficio de los propios interesados, no pudiendo ninguna de las interesadas en esta herencia servirse o utilizar los bienes bajo administración sin pagar una compensación y sin orden o disposición de esta corte; y en su consecuencia la corte ordena que dicha Carmen Valentín pague todos los meses al administrador judicial Francisco Pose, nombrado en este caso la cantidad de $28 y en el caso de que ella resolviere no pagar dicha mensualidad, se le concede todo el presente mes de noviembre para que desocupe dicha casa so pena de desacato. En cuanto a las mensualidades que se alegan debe dicha Carmen Valentín por los meses de julio, agosto y septiembre de 1941, el administrador judicial lo cargará en cuenta a dicha interesada."

Los motivos que alega la peticionaria para pedir que esa orden se declare nula, son tres, a saber:

"(a) Habida cuenta que existe un administrador judicial nombrado en el caso que se revisa, éste, y no una presunta interesada era el llamado a formular la moción para que la viuda pagara arrendamiento por la casa que habitaba, por ser el funcionario que tiene la representación del haber hereditario. La corte inferior desatendió esta parte de la oposición, violando así el principio de derecho que regula los bienes en administración judicial y la facultad del administrador judicial, así como el procedimiento, pues dió personalidad para presentar la aludida moción a persona que de acuerdo a ley no la tenía.

"(b) ...Se desatendió por completo la ley de desahucio, suplantándola por medio de una simple moción. Se creó un contrato de arrendamiento sin existir tal. Se ordenó el desahucio de la casa que ocupa la peticionaria en forma anormal y contraria al espíritu y letra de la Ley de Desahucio...

"(c) Además, el tribunal inferior tuvo ante sí un problema, tanto de derecho como de hechos. La peticionaria sostiene,... que es dueña de la casa en cuestión y dos más a virtud de donación que le hiciera el causante Luis B. Manzano por escritura pública y, en contrario, la dicha Josefa Manzano sostiene que esa donación es nula; radicando demanda ante la corte inferior solicitando su nulidad. La donataria solicitó se eliminaran dichas casas del inventario de bienes de la herencia de Luis B. Manzano y la corte inferior lo denegó por el fundamento que no podía sumariamente determinar la legalidad o ilegalidad de la donación por una simple moción y que se dejasen inventariados hasta tanto se resolviera el litigio; resolución en la que se hace constar que en nada se prejuzgaban los derechos de las partes. En estas condiciones no vemos cómo el tribunal inferior pudo haber asumido actitudes tan encontradas ya que en ambos casos hay gran similitud. La corte inferior se negó a dar eficacia a la escritura de donación para los efectos que las casas fueran excluídas del inventario, y dejó que las partes determinaran su mejor derecho por la correspondiente acción plenaria y por la orden posterior que transcribimos asume una actitud contraria y obliga a la peticionaria a pagar arrendamiento y al desahucio de la casa que le fué donada, a pesar que dicha Carmen Valentín tiene escritura que acredita su dominio, como lo es la donación."

En el certiorari compareció Josefa Manzano de Fernández, por su abogado, alegando ser hija natural reconocida por testamento abierto de Luis B. Manzano, y se opuso a que la orden de 4 de noviembre último fuera declarada nula. El juez demandado se limitó a elevar los autos del procedimiento sobre administración judicial.

Según consta de dichos autos la administración fué iniciada por Carmen Valentín Vda. de Manzano, peticionaria en el certiorari, en noviembre 8, 1940. En diciembre 2, 1940, la viuda presentó una moción haciendo constar que Josefa Arroyo la había manifestado que era hija natural reconocida del causante, teniendo, por tanto, derecho a ser notificada.

En diciembre 31, 1940, compareció la hija, Josefa Manzano y Arroyo, por su abogado. Aceptó que Carmen Valentín era la viuda de Luis B. Manzano y que éste falleció en su último domicilio, Mayagüez, dejando bienes, en octubre 20, 1940, pero negando la validez del matrimonio de su padre con la promovente celebrado en junio 12, 1939, y la del testamento abierto que su padre aparece otorgando por escritura de agosto 24, 1940. Alegó además que por testamento abierto otorgado en agosto 18, 1922, su padre Luis B. Manzano la reconoció como su hija y la instituyó como su única y universal heredera y que tenía radicada en la propia corte de distrito una demanda contra la promovente sobre nulidad de donación *mortis causa* solicitando específicamente que se declarara ineficaz la donación de tres casas hecha por su causante a Carmen Valentín en escritura de junio 12, 1939. Terminó pidiendo que se nombrara un administrador de los bienes de la herencia.

Tras una serie de incidentes que no es necesario referir, fué nombrado, en julio 16, 1941, Francisco Pose, administrador judicial de la herencia, y el 24 del propio julio presentó el inventario de los bienes de la misma, incluyendo en ellos las tres casas donadas por Manzano a Carmen Valentín, una de las cuales es la ocupada por dicha Carmen Valentín, hoy viuda del finado.

En agosto 13, 1941, la corte de distrito, resolviendo peticiones de alimentos provisionales de la viuda y de la hija, ordenó al administrador que pasara mensualmente a la viuda $75 y a la hija $50, y ocho días después declaró sin lugar la oposición de la viuda promovente a que las casas que le donó Manzano cuando no era aún su esposa, se incluyeran en el inventario. Las razones que tuvo para ello constan de su resolución, así:

"La corte ha examinado cuidadosamente la escritura de donación ofrecida en evidencia por la viuda, con el fin de determinar si realmente estos bienes pueden ser excluídos del inventario preparado por el administrador, o si en contrario deben quedar sujetos a la administración.

"Los hechos tercero y cuarto de la escritura de donación, que es la número 16 de 12 de junio de 1939, dicen así:

" 'Tercero: Que aunque el primer compareciente se encuentra en buen estado de salud, debido a una dolencia que sufre en la vejiga, es lo más probable que se vea obligado a someterse a una operación quirúrgica, la cual, aunque no es de peligro, pudiera muy bien resultar en un hecho desgraciado.

" 'Cuarto: Que por tal motivo y considerando lo expuesto con relación a la conducta asumida por la dicha Carmen Valentín, para con el primer compareciente, a fin de premiarle, libre y espontáneamente el relatante Luis Manzano Soto, le dona las tres descritas propiedades en este instrumento a dicha Carmen Valentín, para surtir efecto esta donación a la ocurrencia del fallecimiento del donante y consecuentemente el donante se reserva el pleno dominio y usufructo de dichas tres propiedades mientras viva, pasando tanto el pleno dominio como el usufructo de ellas a la dicha Carmen Valentín al momento de la ocurrencia de su muerte.'

"De una simple lectura de estos hechos citados la corte queda convencida de que esta donación debe reputarse como una *mortis causa*, esto es, llamada a producir sus efectos por la muerte del donante. El donante la hizo bajo el temor de que no pudiera salir bien de una operación a que iba a someterse. Anticipándose indudablemente a un hecho desgraciado que pudiera sobrevenir como resultado de esa operación. Siendo ello así, participa como todas las donaciones *mortis causa* de la naturaleza de las disposiciones de última voluntad y han de regirse por las reglas de la sucesión testamentaria.

"Conviene además afirmar que si la donación no ha de producir sus efectos, hasta que el donante muera, queda como se ha venido sosteniendo por distintas autoridades, borrada su diferencia con el legado; desaparece aquélla, para confundirse con éste. Como en este caso la donación se contrae a tres propiedades que se describen e identifican suficientemente en la ameritada escritura de donación, la corte concluye de que se trata de un legado específico.

"De la ley de Enjuiciamiento Civil Española comentada y explicada por don José María Manresa y Navarro, del tomo tercero, página 198, y en relación con los bienes que deben incluirse en el inventario, cree la corte conveniente reseñar como aplicable lo siguiente:

" 'Al tratar del inventario (pág. 188 de este tomo) hemos dicho que deben incluirse en él los bienes legados especialmente, y los que el cónyuge sobreviviente hubiere llevado al matrimonio, pues también

unos y otros han de valuarse; aquéllos para ver si exceden de la cantidad de que el testador puede disponer en perjuicio de los herederos; y éstos para adjudicarlos a su dueño por el mismo valor que se le designa.'

''Tratándose en este caso por lo anteriormente expuesto, de una donación *mortis causa* que opera como un legado específico y que ha de regirse por las reglas de la sucesión testamentaria, la corte entiende que los bienes reclamados deben permanecer en poder del administrador judicial para ser administrados por éste hasta tanto se llegue a la etapa de la partición; que es el momento oportuno para que a cada cual se le adjudique su participación hereditaria, luego de haberse terminado todas las reclamaciones o litigios de la administración.''

Como el administrador descontara a la viuda de la pensión alimenticia $28 mensuales por alquiler de la casa que ocupaba, la viuda se quejó a la corte y ésta resolvió la queja en los siguientes términos:

''...que el administrador complete a la viuda los $75 de la pensión que le fué concedida, pagándole los $28 que le descontó, sin perjuicio de cobrarle la misma suma mensualmente por la casa que ocupa por los medios que le autoriza y concede la Ley de procedimientos legales especiales.''

Insistió la promovente en su alegado derecho en un largo memorándum que termina así:

''*Resumamos:* ya sea la donación una de carácter *inter-vivos* como hemos sostenido en nuestra contestación en el pleito sobre nulidad de donación presentado por Josefa M. de Fernández; o ya sea de carácter *mortis causa* como arguye Josefa M. Manzano en ese pleito, lo cierto es, que hasta ahora existe una donación de los bienes que se solicita no sean administrados por el Sr. Pose. Donación que es válida pues ningún tribunal la ha declarado nula. Donación que tiene que surtir sus efectos legales, cuales son: el traspaso de los bienes donados a la donataria; el dominio de la donataria sobre esos bienes que conlleva la administración de los mismos, pues mal puede haber dominio de bienes si no hay administración de ellos. Si la donación es un legado específico, hay que aplicar (lo hemos dicho) los artículos 804 y 805 del Código Civil, ed. 1930. De todas formas como se mire el asunto, Carmen Valentín entra en la posesión real de sus bienes desde la muerte de Manzano y no hay poder, ni ley

ni precepto que le quite la administración de bienes de su exclusiva propiedad. Ello equivaldría a desposeerla ilegalmente.''

Y la corte resolvió finalmente lo que sigue:

''Trátese de una donación *inter vivos* o *mortis causa* que pudiera constituir un legado del donante,...entiende la corte que el derecho que reclama la cónyuge viuda debe ser resuelto en el pleito sobre nulidad de donación y que la resolución del juez interino de esta corte disponiendo que las tres fincas objeto de la donación, continúen bajo la posesión del administrador judicial hasta que se resuelva la validez o nulidad de dicha donación o legado, debe ser sostenida sin que se entienda en forma alguna que esta conclusión prejuzgue el referido pleito pendiente de nulidad de donación.''

Fué entonces que la hija presentó la moción que dió lugar a la resolución de noviembre 4, 1941, cuya nulidad se pide.

■■ Nos hemos visto obligados a ahondar un poco en los antecedentes del caso para poder resolver de acuerdo con los hechos y la ley la única cuestión que, a nuestro juicio, debe resolverse dentro del procedimiento de certiorari. No es necesario decidir si las casas donadas en la forma que conocemos pudieron o no inventariarse como bienes de la herencia. Partiremos del hecho de que lo fueron, pero no podemos aceptar el de que todas estén en posesión del administrador. Dos al parecer lo están y no ha surgido conflicto alguno con respecto al cobro de sus alquileres. Pero una no lo está, la ocupada por la promovente, quien no sólo la viene ocupando si que se negó a entregarla o a pagar renta por ella, sosteniendo que no es de la herencia sino suya. Siendo esa la realidad de las cosas, ¿tuvo facultad la corte sentenciadora para dictar la orden que dictara ordenando a la viuda que pagara el alquiler fijado sin convenio alguno con ella por el administrador y en caso de que resolviera no pagarlo concediéndole alrededor de un mes para desocupar la casa so pena de desacato? La pregunta debe responderse en la negativa.

Es cierto que el administrador debe inventariar y posesionarse de todos los bienes de la herencia, pero cuando

surge, como surgió en este caso, una controversia sobre el dominio y la posesión de algún bien que el administrador considere que pertenece a la herencia, entonces para llevar ese bien a ella deben seguirse los procedimientos ordinarios que la ley determina y no recurrirse a métodos drásticos que no pueden adoptarse dentro del procedimiento de administración.

La propia corte sentenciadora reconoció la existencia del pleito iniciado por la hija contra la viuda en solicitud de que el título que la viuda alegaba tener sobre las casas donádasle por el padre de la demandante se declarara nulo y por virtud de ello se negó a resolver dentro de los procedimientos sobre administración la cuestión que le planteara la viuda al pedirle que los bienes donados fueran excluídos del inventario, y ese mismo criterio que aplicó entonces debió aplicarlo después.

Su orden drástica de pagar o desalojar con la amenaza del desacato no está justificada. El statu quo debe preservarse. Es lo justo y lo legal.

*En su consecuencia, debe decretarse la nulidad que se solicita y devolverse los autos a la corte de distrito para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Snyder no intervino.